## BRITT v. NASHVILLE BRIDGE CO. et al.
### (BRITT, Intervener).
#### No. 5365.

Court of Appeal of Louisiana. Second Circuit.

Jan. 5, 1937.

Hawthorn, Stafford & Pitts, of Alexandria, for appellant.

Polk & Robinson and Lee Caplan, all of Alexandria, for appellee.

TALIAFERRO, Judge.

William Isaac Britt, a steel structural worker, lost his life by falling from a bridge being erected over Red river near the city of Alexandria, La., by defendant, Nashville Bridge Company. The accident occurred on September 20, 1935, while he was performing the duties of his employment. He was twice married. A daughter, Annie Lou, age 15 when he died, is the only issue of the first marriage. A second wife, Mrs. Margaret Britt, survived him. By her there are two children—Margaret, age 8, and William Isaac, a posthumous son, born April 4, 1936.

Deceased and his first wife were divorced about the year 1924. He then intrusted the custody of their 4 year old daughter to his father and mother, William H. Britt and wife, then and now living in the city of Birmingham, Ala., where she has since continuously resided. William H. Britt, the grandfather, was on October 29, 1936, appointed guardian to his minor ward by the probate court of Jefferson county, Ala. Thereafter he instituted this suit for her use and benefit against said Bridge Company and its insurer, Liberty Mutual Insurance Company, to recover the amount of death benefit or compensation alleged to be due her as a wholly dependent child of her father. It is alleged that defendants are due the widow and children of deceased, under the Workmen's Compensation Law (Act No. 20 of 1914, as amended), $20 per week for 300 weeks, and that this minor daughter is entitled to one-third of said amount, or $6.66⅔, for said period, and judgment is prayed therefor.

Defendants admit they owe the widow individually and for the use and benefit of her two minor children, and to Annie Lou Britt, should the court find that she was a dependent minor child of her father, which is not admitted, the sum of $20 per week, beginning September 20, 1935, and continuing during dependency for a period not to exceed 300 weeks. They aver that, if Annie Lou Britt is entitled to recover any amount at all, such should be limited to $3.33 per week, beginning September 20, 1935, and ending on October 4, 1938, her eighteenth birthday. They further aver that they have at all times admitted liability, as herein stated, but, because of the conflicting claims between Mrs. Margaret Britt and the representative of Annie Lou Britt, no payments whatever were made by them

on compensation account. On filing answer they deposited in the registry of the court an amount equal to the payments then exigible, plus $150 to cover funeral expenses, and procured an order of court permitting them to make future deposits of compensation in the court's registry. Mrs. Margaret Britt individually and as the tutrix was impleaded. She denies that Annie Lou was a dependent child of her father when he was killed, and for that reason denies that she is entitled to any part of the compensation defendants admit they owe.

In the alternative, should such dependency of Annie Lou Britt be established to the court's satisfaction, in such event it is urged that recovery by her should be limited to $3.33 per week until her eighteenth birthday.

Subsequent to the filing of pleadings above mentioned, the parties reached an agreement whereby, with the court's sanction, the deposited compensation and that to be deposited thereafter was to be paid over to Mrs. Britt individually and as tutrix, excepting $6.66⅔ per week, the amount now in contest.

The lower court found and held that Annie Lou Britt was wholly dependent upon her father, within the meaning of the Workmen's Compensation Law, and decreed her to be entitled to $3.33 per week, beginning September 25, 1935, and continuing for 300 weeks, however, during her dependency only, which, we assume, would cease when she arrived at the age of eighteen years. The balance of the compensation was awarded to Mrs. Britt, individually and as tutrix. She has appealed; and, to protect itself from the ultimate possibility of having to pay more compensation than they admit owing, defendants have also appealed. Answering the appeal, appellee prays that the award in her favor be increased to $5 per week.

The issues of the case have been so narrowed by admissions as to present for decision only two questions, namely: (1) Was the minor Annie Lou Britt dependent upon her father for support? And, if so (2) What percentage of the total compensation admitted to be due is she entitled to?

Deceased was deserted by his first wife in 1924. He then carried his only child, Annie Lou, age 4, to his own parents' home in Birmingham and remained there for several months. Being a structural steel worker, necessarily he had to go from place to place where bridges were being erected to find employment. He left the parental home destined for some place in Kentucky, and, after the lapse of about one year, there married his second wife. Their first child was born July 11, 1927. He left Kentucky in November, 1933, for Morgan City, La., where the Louisiana Highway Commission was having a bridge erected over the Atchafalaya river, and, failing to secure work there, after 2 weeks went to Klotz Springs, La., where another steel bridge was in the course of construction. He worked there until May, 1934, and then went to New Orleans, and was there given employment on the bridge then being built over the Mississippi river. He came from that job to the bridge where he was killed. It does not appear that he was without employment for long periods, and, when he did work, his salary on an average ranged from $32 to $35 per week. He often drew as much as $1 per hour and worked 8 hours a day. When killed, he was earning $45.60 per week. During his second marriage, he and his family at times lived in trailers attached to automobiles and at other times in apartments. Mrs. Margaret Britt is positive in the belief that deceased never contributed one penny in money or anything else of value to Annie Lou during his second marriage, although she admits he often visited her and evinced the same affectionate attitude toward her as he did to his second daughter. She testified that her husband's earnings were invariably turned over to her by him as soon as received; that she paid all bills for the family's subsistence, even invariably purchasing the clothes he wore; that living expenses, doctors' bills, automobile notes, etc., consumed all he made and more; that he usually was in debt, and therefore had no available cash to send to his daughter in Birmingham. She admits, however, that in September, 1934, the family fisc was sufficiently strong to defray her and her daughter's expenses by rail to visit her parents in Kentucky and that at the same time deceased traveled by rail to see his parents and other daughter. He returned to New Orleans after a stay of a few days, and she joined him there following the visit to Kentucky.

Wm. H. Britt testified that, when deceased left his daughter with him and wife in 1924, it was with the distinct understanding and agreement that, if they would look after her and keep her, he would send to them as soon as he obtained work monthly amounts sufficient to defray the cost of her

support; that he lived up to his parental duty on this score, and from time to time sent to him cash money or postal money orders sufficient to cover the child's support; that following his second marriage, for a period of about 3 months, he failed to make remittance, but resumed doing so on being admonished by letter of his duty to his own blood and reminded of his agreement with his parents. He further testified that his son returned three or four times each year to see his daughter and would supply her with cash and fit her out with hat, shoes, and suitable clothing, etc. His testimony is corroborated in all material respects by his wife's. It is also corroborated in the main by another son, who does not live with him. Annie Lou testified that her father sent money regularly to her grandparents for her support as far back as she could remember. She recalled the first money he sent her personally was in 1932, and that the last he sent her, $10, was in August, 1935. She recalled that on Labor Day in 1934, when their picture was taken, he gave her $15 in cash. The picture is in the record.

Wm. H. Britt is shown to be a huckster of vegetables and is of limited means. To add to his already limited ability to make money, his left leg was amputated in 1910 below the knee. The testimony does not definitely disclose the extent of his material substance, but we are impressed from what is in the record with the thought that his condition was such that he would not wish to take over the task of gratuitously rearing and providing for another child, and especially so when we consider that its father was a vigorous man and skillful worker, 34 years old when killed, and commanding rather flattering wages at all times.

In this case, as too often appears in judicial proceedings, the proverbial antipathy of a second wife for her stepdaughter has crept in. The Britts testified that the second wife manifested a decided dislike for Annie Lou and would not consent that she live with her and deceased; that this unfriendly attitude toward the child at one time almost precipitated a separation between the couple; that deceased told his parents that his wife would not stand for him supporting Annie Lou, and he therefore kept from her the fact that he was doing so. Annie Lou herself testified that her father confided this information to her also. If this be true, and we would have

to disbelieve an abundance of human testimony to say that it is not true, it is easy to account for Mrs. Margaret Britt's believing her husband at no time contributed to his daughter's subsistence. She was kept in ignorance of such fact. The testimony of the four Britts was taken under commission. If believable, it certainly makes out a case of total dependence, within legal contemplation, of Annie Lou Britt upon her father for support and subsistence. We could offer no good reason for rejecting it. Certainly to do so would brand all of them, including Annie Lou, as perjurers. All witnesses are presumed to testify truthfully. The only positive evidence in the case to refute that given by the Britts is that of deceased's widow. It is not inconceivable that she is honestly mistaken when she says deceased contributed nothing toward his daughter's support. This for the reason above given. The lips of the father are closed to defend himself against the aspersion implied in the charge that he failed in an obvious parental duty to his first-born. Every presumption, if any is necessary to the cause, weighs against the thought of such conduct; and when we recall that, as opportunity arose and conditions allowed, he would return to his old home to visit his child, we are impelled to the conclusion that he did not fail in the observance of his duty and the performance of a solemn covenant made for the safety and welfare of the child. And, in arriving at this conclusion, we have not allowed the legal and moral obligation resting upon deceased to do as we find he did do, to wield a deciding influence. The facts and circumstances of the case, disclosed by the testimonial proof, are controlling of the question.

Mrs. Britt's counsel argues that at best Annie Lou was only partially dependent upon her father's bounty for support and therefore not entitled to any part of the compensation. They cite subsection 2 (D) of section 8 of the Workmen's Compensation Act (Act No. 242 of 1928, p. 359) to support this position. This provision, inter alia, says that children under the age of 18 years and living with the parent at the time of his or her death are conclusively presumed to be wholly and actually dependent upon the deceased; that in case there are both surviving wife and child or children, or surviving husband and child or children entitled to compensation, the amount thereof due under the

act shall be paid entirely to the surviving husband or wife for the common benefit of such survivor and the child or children. The provision further says that in "all other cases" the question of legal and actual dependency in whole or in part shall be determined in accordance with the facts as they may be at the time of the death of the workman, and it is further provided, "* * * and in such other cases if there are a sufficient number of persons wholly dependent to take up the maximum compensation under this act, the death benefit shall be divided equally among them, and persons partially dependent, if any, shall receive no part thereof."

The phrase "in such other cases" refers to claimants of death benefits or compensation who are not conclusively presumed to be "wholly or actually" dependent upon the deceased at the time of death. It clearly embraces children who, at such time, are not living with the deceased. The matter of dependency, in such instances, is one of fact, the establishment of which devolves upon the claimant. The quoted clause of the act seems to exclude children who are only partially dependent. Dependency is a relative term. The fact that some other person may to a limited extent attend the ordinary wants of a child claimant or contribute to its welfare in excess of the usual necessities of life will not destroy its condition of dependency. In the present case, doubtless the grandparents, in addition to sharing their humble home with their ward, contributed of their time and scant means to the end that she might be contented and feel that their solicitude for her welfare was beyond perfunctory. However, such acts by those occupying such relationship to the child do not, under the statute, convert a condition of dependency into one of independency. It was the father's contribution that enabled his parents to measurably maintain the child as might be expected for one of her station in life, and possibly prevent her from experiencing extreme hardship for lack of the ordinary necessities of life. We approve, as having application to this case, the holding of the court in Bloomington-Bedford Stone Company v. Phillips, 65 Ind.App. 189, 116 N.E. 850, 852, to this effect: " 'Total dependency' on a deceased employee, within the Workman's Compensation Act (Acts 1915, c. 106), exists where the dependent subsists entirely on the earnings of decedent; but, when otherwise entitled to the rights of total dependents, claimants are not deprived thereof on account of temporary gratuitous services rendered them by others, occasional financial assistance by others, or other minor considerations or benefits."

Many cases from other jurisdictions to this effect could be cited. There seems to be none of our own courts.

■ In arriving at the proportion of compensation due Annie Lou Britt, the lower court evidently reached the conclusion that each dependent child was entitled to one-third of the amount due after accrediting the surviving widow with one-half (32½ per cent.) thereof. We think this apportionment correct. The act states that, where there is a surviving widow and children of the deceased, all the compensation shall be paid to the mother for the common benefit of all, but this provision cannot and does not apply entirely to facts as they appear in the present case. If all the children were living with the widow and under her immediate custody and control, it would apply.

Counsel have indulged in lengthy discussion of the intendment of the Workmen's Compensation Law with respect to division of compensation where there is a surviving widow and one, two, or more dependent children. We shall not here undertake to reply in detail thereto. The percentages allowed by the statute are arbitrary and in many respects inconsistent. However, it is not the province of the court to institute a new set-up on the subject; it is the court's duty, where uncertainty exists, to construe the statute according to equitable rules in the light of the underlying philosophy motivating its adoption.

For the reasons herein assigned, the judgment appealed from is affirmed. The costs of the lower court are to be paid as therein decreed; costs of this court are assessed against appellant, Mrs. Margaret Britt, individually and as tutrix.