These two suits, which were consolidated for argument and submission, involve claims for compensation arising out of the *Page 78 
death of Willie F. Smith, Jr., husband of the plaintiff in one suit and the father of a minor, plaintiff in the other suit. Mrs. Smith, plaintiff in the first suit, asks for compensation at the rate of $20 per week for a period not to exceed 300 weeks, plus the sum of $150 for funeral expenses. She is the mother and natural tutrix of her two children Stewart Arnett Smith and Argrea Ann Smith, issue of her marriage with her deceased husband and her demand includes whatever compensation would accrue to them.
The plaintiff in the second suit is Mantie Day, the maternal grandfather of Essie Pearl Smith, minor, issue of the first marriage of the decedent, Willie Francis Smith, Jr., with Essie Pearl Day, also deceased. Mantie Day is the duly qualified dative tutor of the minor Essie Pearl Smith for whom he asks compensation, separately and independently of the claim made by the widow in the other suit, at the rate of $11.36 per week, for a period of 300 weeks.
Willie F. Smith, Jr., was formerly employed by the defendant Tangipahoa Parish School Board as one of its school-bus drivers and was killed in an accident while acting in the course and scope of his employment on March 24, 1944. There is no dispute on this point and the defense, as appears from the answer, consists of a plea that the decedent was an independent contractor. In the alternative it is pleaded that the amount of compensation that is demanded is far beyond what is justly due as, it is claimed, that from the salary the deceased was paid, $139.80 monthly, there must be deducted a rental hire of the equipment which was furnished by him consisting of his school-bus and including the expenses necessary in operating it, which would leave him a net average weekly wage of $10.95. In the widow's suit it is contended that she is therefore entitled, under the law, to 32 1/2% of that amount for a period of 300 weeks and that her two minor children, together, are entitled to 2/3 of the remaining 32 1/2%. In the Mantie Day suit it is contended that the tutor is only entitled to recover for the benefit of the minor he represents, at the rate of 1/3 of 32 1/2 of the average weekly wage of $10.95 for a period of 300 weeks. In other words, after having arrived at the average weekly net earnings of the decedent, the defendant's contention is that it only owes 65% of the amount to be divided between the widow who is entitled to 32 1/2% and all three minor children who together are entitled to the remaining 32 1/2% or 1/3 of that amount each.
After hearing in the court below the district judge fixed the rate of compensation at $18.50 weekly, of which amount he awarded the widow one-half and the other half he divided as follows: Two-thirds to Mrs. Willie F. Smith, Jr., as tutrix of her two minor children and one-third to Mantie Day, tutor of the minor Essie Pearl Smith. He also awarded the widow the sum of $150 for funeral expenses. The defendant appealed and both plaintiffs have answered praying for an increase in the rate of compensation to the amount originally demanded by each and also for an increase in the award for funeral expenses.
[1] The case is very similar in some respects to that of Ridgdell v. Tangipahoa Parish School Board, La. App.,17 So.2d 55, in which the same defense of independent contractor was presented. It was there rejected and does not seem to be seriously urged in this suit. For the same reason that it was rejected in that case we hold that it cannot be sustained here.
[2-4] The issue with regard to the distribution of compensation was not presented in the Ridgdell case as the situation there was not the same as it is here. It is raised in this case because there is a child of a former marriage, the one represented by her grandfather, with whom she lives, plaintiff in the second suit that was filed. We find no merit in the contention raised under that issue that this child has a separate and independent cause of action for compensation as the law is clearly to the effect that the maximum amount that can be awarded as compensation is 65% of the weekly average earnings of the deceased employee. The widow is undoubtedly entitled to receive 32 1/2%. Par. 1, subsec. 2 (E) of Sec. 8 of Act 242 of 1928. If there is a widow and two or more children, the total amount of 65% must be paid. Par. 3 of the same subsection of the Act. Whilst in subsection (G) of this same section it is provided that the compensation payable in case of a surviving widow and children shall be paid entirely to the widow for the common benefit of herself and her children, the law has nevertheless been construed to mean that if there are other children of the deceased employee by a pre-deceased wife or by a divorced *Page 79 
wife, shown to have been dependent, they can recover their proportionate share of the amount payable for the benefit of all the children (in this case, 32 1/2%), through a duly qualified legal representative. See Pointe Coupee Electric Membership Corporation et als. v. Pettey et als., La. App.,6 So.2d 764; Britt v. Nashville Bridge Co. et al., La. App., 171 So. 493; Selser v. Bragmans Bluff Lumber Co., La. App., 146 So. 690.
[5, 6] With these two issues disposed of we are left now to determine the amount of the average net weekly earnings of the decedent on which compensation is to be based. In the Ridgdell case there was no evidence showing what the monthly expenses were for operating the school-bus except the amount of gasoline purchased by the driver. Like in this case he used the bus for other purposes besides transporting school children and the only basis on which this expense could be arrived at was to pro-rate the amount of gasoline consumed. In this case however, the defendant produced several school-bus drivers as witnesses in an effort to show what is the average amount of all monthly expenses incurred in operating a bus and from this to try to reach an average on which proper deductions could be made. The trial judge, in fixing the average monthly expenses at $25 stated that these included "the cost of gasoline, oil and incidental expenses and repairs used in and to the school-bus in making the route per month." As it is shown that the decedent's school route covered 40 miles per day and he ran it 20 days per month, he therefore drove approximately 800 miles per month in transporting the children. His expenses as fixed by the judgment of the district court averaged a bit more than three cents a mile which obviously is not correct as it is a matter of general knowledge that it costs more than that to operate even a light automobile.
In reading the testimony of the bus-drivers who were witnesses for the defendant, we detect an effort on their part to magnify their expenses with the view no doubt of showing how little of their salary is left net to them each month. In fact, we learn from the record that there has been formed an association among them for the purpose of trying to get better pay. Their testimony naturally has the effect of materially reducing the net amount plaintiff's deceased husband would have received as some of them estimated their costs of operation anywhere from 12 to 15 cents per mile. Plaintiff and her witnesses, on the other hand, tried to minimize the expenses as much as they could, the effect of which of course would be a greater increase in the rate of compensation. We have carefully gone over all their estimates of different expenses including gasoline, oil, maintenance, tire replacements and depreciation and find on averaging them all, an operating cost of a little over four cents per mile which, in our opinion, is again too small.
For lack of any more definite proof on the items of expenses just mentioned we have concluded that the better and safer method of fixing the costs of operation is on a mileage basis. On this point too, unfortunately, the record is far from satisfying as we find the two extremes, one of three cents per mile as arrived at in the judgment of the district court and the other of fifteen cents as testified to by one of the witnesses. Between these two however there are two other estimates, one of four and the other of twelve cents per mile. Taking all these estimates into consideration we strike an average of approximately eight cents per mile which we are convinced comes nearer to being correct than any other and we have decided to use that figure in computing the deceased employee's monthly expenses.
Based on a run of 800 miles per month, at eight cents per mile, the decedent's monthly expenses therefore amounted to $64.00. This sum deducted from his monthly pay of $139.80, left him a net of $75.80 which divided by four made his average weekly earnings $18.95. The total amount of compensation due therefore is 65% of that amount, or $12.31 per week for a period of 300 weeks. Of this amount one half and two thirds of the other half is payable to the widow for the common benefit of herself and her two minor children and the remaining one sixth is payable to Mantie Day, tutor of the minor Essie Pearl Smith.
[7] The demand of the plaintiff Mrs. Willie F. Smith, Jr., in answer to the appeal for an increase in the allowance for funeral expenses, cannot be considered as the total demand would then be far in excess of the one prayed for in her petition.
For the reasons stated herein it is ordered that the consolidated judgment herein *Page 80 
rendered and appealed from in both cases be and the same is hereby amended by reducing the amount awarded as compensation from the sum of Eighteen and 50/100 Dollars weekly to the sum of Twelve and 31/100 Dollars weekly, of which amount, five-sixths, or $10.25, shall be payable to Mrs. Willie F. Smith, Jr., plaintiff in one suit, for the common benefit of herself and her minor children, Stewart Arnett Smith and Argrea Ann Smith, and the remaining one-sixth, or $2.06, shall be payable to Mantie Day, tutor of the minor, Essie Pearl Smith, plaintiff in the other suit, for the benefit of said minor.
In all other respects the said judgment is affirmed.