## OHIO BELL TELEPHONE CO v RAY

Ohio Appeals, 7th Dist, Harrison Co

Decided Dec 7, 1932

J. C. Sharon, Cadiz, and Henderson, Burr, Randall & Porter, Columbus, for plaintiff in error.

Frank B. Grove, Cadiz, and T. J. Duffy, Columbus, for defendant in error.

**OPINION**

By ROBERTS, J.

It is provided in part by §1465-90 GC, that within ten days after the filing of the answer, the Industrial Commission shall certify to such court a transcript of the record of such rehearing and the court or the jury under the instructions of the court, if a jury is demanded, shall determine the right of the claimant to participate or continue to participate in such fund upon the evidence contained in such record and no other evidence.

It seems to be the contention of the defendant that essential to a cause of action, it was the duty of the plaintiff to have introduced in evidence in the case, the application of the plaintiff for compensation, the finding and order of the Commission rejecting the claim, the application to the Commission for rehearing, and the finding and order of the Commission denying the application for a rehearing.

Clearly, these documents were not evidence in the case and the statute just quoted, provides that the hearing in the Common Pleas Court shall consist of that which was heard as evidence on the rehearing before the Commission and in effect, that nothing else is competent.

The furnishing of the transcript of the testimony taken upon the rehearing by the Industrial Commission was presumptive evidence that there had been a rehearing and that previous thereto, other statutory requirements and provisions had been observed. That the rehearing was upon the application of the plaintiff therefor, which of itself, presupposed an original hearing and an application for such hearing. These documents were no more evidence in the case than are the docket and journal entries and the pleadings in an ordinary case in the Court of Common Pleas. There was no occasion and no reason for the Industrial Commission to have offered to it or to receive in evidence, these documents, which in the regular course of events,

brought the matter for a hearing before the Commission. The Commission, after having granted a rehearing and heard the evidence then offered sends a certified transcript of this testimony to the Court of Common Pleas which constitutes all the evidence admissible in that court.

This all presumes regularity in the proceedings to this point. Under the provisions of §1465-90 GC hereinbefore quoted, it was not within the power of the plaintiff to offer a record of these pleadings and documents in the Court of Common Pleas. It was ·not competent to have done so in the hearings before the Industrial Commission.

As we view the law, the issue comes on for trial in the Court of Common Pleas with a presumption of regularity and sufficiency so far as these documents and preliminary proceedings are concerned. If it was desired on the part of the defendant to present an issue upon these propositions, it could have and should have been done' by allegations to this effect in the answer. For instance, it is claimed that the application for rehearing was not filed within the statutory period of thirty days. That such was the fact is not apparent from the allegations of the petition, which was not therefore. subject to a demurrer as not showing a cause of action, and, as under the general rule in such a situation, a defense upon the statute of limitations must be affirmatively alleged in the answer.

Some contention having arisen between counsel after the introduction of the testimony in this case, as to whether as claimed by counsel for the defendant that the evidence was not sufficient for the reasons hereinbefore indicated to justify the submission of the case to the jury, the court thereupon reopened the case for the introduction of certain copies, not certified, of the documents, whose absence was subject to complaint on the part of the defendant. And this is said to have constituted error. If our previous suggestion is correct that all of this matter was assumed to be true, in the absence of affirmative allegations denying it in the answer, then the introduction of these copies was immaterial. This is somewhat indicative of an attitude on the part of the defendant to object to the omission of these documents and if supplied, to object to their admission, and claim error either way.

It was further contended that there was nothing in the evidence to indicate that the accident complained of occurred in Harrison County. This position is understood to have been abandoned. In any event, it cannot consistently be claimed in view of the fact that an answer has been filed by the defendant in this. case.

We find no. prejudicial error in these preliminary matters justifying or requiring a reversal of this case. In this connection attention is directed to the leading case of Roma v Industrial Commission, 97 Oh St 250, in which the desirability of liberality and avoidance of technicality is recognized as proper procedure in cases involving the Employer's Liability Act, it is said on page 252 of the opinion:

"A consideration of this act clearly shows that it was the purpose and object of the act to obviate the necessity of claimants dealing with the board through agents, representatives or attorneys, and we do not feel that it is a harsh rule to require the board in the event of the rejection of a claim for compensation to see to it that claimant receives actual notice thereof. `

"It is not to be overlooked that the claimant denied to himself the right he may have had, if any, to prosecute his claim in the courts of the state, but voluntarily submitted the decision of the Board of Awards, and we feel that if he be defeated by a technicality, although a proper and just one, it would be quite out of harmony with the underlying objects the general assembly had in view in enacting the law.

"The State of Ohio by the very terms of the law becomes in fact the representative, if not the champion, of the claimant, to the extent of seeing that exact justice is done him, and it is quite manifestly the intention of the law that the ordinary rules of procedure, although wise and fair in the abstract, must give way, if, in adhering to them, any conclusion even savoring of injustice would result."

Proceeding to a discussion of the main proposition which is the issue as to whether or not the decedent, at the time of the accident which caused his death, was an employee of the defendant, and acting in the course of his employment.

This case has had elaborate oral argument and exceedingly exhaustive briefs in its submission to this court. There is no dispute of fact involved in this case. No contradiction of testimony and the only issue is an application of the law as determined to the undisputed facts which briefly stated are substantially as follows:

In the month of July, 1929, the defendant Telephone Company was engaged in the

construction or rebuilding of a telephone line on the road extending from Cadiz, Harrison County to Uhrichsville, Tuscarawas County. This work was being prosecuted under the direction of a line foreman by the name of William Houck, who had under him at the prosecution of this work some four or five men. At the time of the accident, these men were engaged in the stringing of telephone wires over and upon the cross arms of the poles, which wires were unwound from a reel drawn over the cross arms and pulled taut ordinarily, by the use of a motor truck which was operated by one of the employees.

However, it sometimes occurred particularly where there was a bend or curve in the road, that the line could be more expeditiously and cheaply constructed by leaving the highway where the line was ordinarily located and where the truck could be used, and deviating on a private right of way to again connect with the highway at some other point. While so off the highway and upon private land, the truck could not, ordinarily be used for the purpose of pulling the wire. Recourse was then had to a team. The defendant did not have as a part of its equipment a team. The use of the team being required on July 12, 1929, the evening before, Houck, the line foreman, called James A. McFadden on the telephone and asked him to furnish a team and driver for the use of the Telephone Company on the following day. McFadden agreed to furnish a team, but being himself otherwise engaged, said that he would send a man to drive the team. He thereupon secured the decedent, Ray, to drive the team upon this particular day and on the morning of the 12th of July, Ray hitched the team with the assistance of McFadden, to a wagon and drove to the location of intended operation. During that day the team driven by Ray was used for pulling the wire upon private right of way. The team thus driven by Ray, was not used after the 12th day of July, until the 16th day of July, when on the evening before, Houck, the foreman, again called upon McFadden for the use of a team and driver, and asked that Mr. McFadden send the driver who had been furnished on the previous occasion. The team and Ray were furnished by McFadden and worked part of the day. Then under the direction of Houck, Ray took the team, hitched it to the wagon, and was proceeding to another location where the team would be required for similar services, and after having so driven upon the highway for about a mile, the wagon was struck by a rapidly moving automobile and as a result of this accident, Ray lost his life.

McFadden received a dollar an hour or eight dollars per day for the use of the team and driver, and paid Ray three dollars per day for his services. While so far as the evidence disclosed, the team and driver was used exclusively for the pulling of the wire, the evidence does not indicate anything in the conversation between Houck and McFadden on either occasion, as to the use for which the team and driver was required. The services performed by Ray with the team were such as was required by Houck who gave directions for such work as he wished the driver and the team to perform.

The final issue is thus raised as to whether under the circumstances and conditions as shown by the evidence, such relation of employer and employee, existed between the Telephone Company and Ray, as entitles the plaintiff to compensation for the death of her husband as hereinbefore stated.

Some contention is made by the defendant that the wagon was not required or used by Ray in the prosecution of the work for which he was employed. Presumably, that is true. However, it was a reasonable thing to use a wagon in which to ride to go to this work which required the use of double trees. It was a convenient and usual thing to do. No complaint was made by anyone on behalf of the defendant by reason of this use of the wagon with the knowledge of the employees of the defendant and the foreman, Houck. It is further suggested that Ray was not engaged in the business for which he was employed when the accident occurred. This is also unimportant as we apprehend no question can be made that Ray was just as much in the service of the master in proceeding from one place of employment to another, under the direction of the foreman, as he was when engaged in the actual work of stringing the line by the use of the team.

### Sec 1465-61 GC reads:

"DEFINITION OF TERMS: The terms employee, workman, and operative as used in this act shall be construed to mean:
* * *
(2) Every person in the service of any person, firm or private corporation, including any public service corporation, employing three or more workmen or operatives regularly, in the same business, or in and about the same establishment, under any

contract of hire, express or implied, written or oral, including aliens and minors, but not including any person whose employment is but casual and not in the usual course of trade, business, profession or occupation of his employer."

While the work of stringing and pulling wire by a team was not constant, but intermittent as the territory might be where the line was under construction, nevertheless, it was regularly required wherever the truck could not be used for that purpose, therefore, presumably was not casual. However, if simply casual by the terms of the section just quoted, that was not enough to prevent the person so working to be outside of the protection of the statute which excluded such person whose employment is casual and not in the usual course of trade. The employment of Ray and the use of the team was in the usual course of trade and required with such regularity and such frequency as the varying conditions of the work under construction required.

We think this proposition may be indicated by an illustration. The defendant was engaged in the construction and operation of telephone lines and in the carrying on ot the business of transmtiting messages thereover, work which was necessary or reasonably required, although not constantly, in the regular, ordinary business, was within the protection of the statute. However, supposing the defendant company should, outside of its regular business, engage as a matter of patriotism, and for advertising in a display of fire works and a person should be employed for the purpose of making this display and an accident should occur by premature discharge or otherwise, and such person should be injured, that work might be considered casual, but it was not in the usual course of trade or business of the employer and, therefore, such employee would not come within the provisions of the Workmen's Compensation Act.

Some citations and quotations of authorities pertinent upon this issue will now be given. Referring to brief of defendant in error, commencing on page 8, in the case of Burt v Davis Wood Lumber Company, 157 La. 111, 102 S 87, the court said:

"Nor does the fact that the employee furnished his wagon and team alter his relation with his employer; nor does such tact put the employee in the character of an independent contractor. The circumstances of an employee furnishing his own team or tools could be of significance or

weight, at most, in fixing the average weekly wage."

On page 9, in the case of **Snyder v Cigar Company, 22 O.C.C. (N.S.) 45; 33 O.C.D. 440; 81 Oh St 568,** the court said: "A workman who is in the general employment of some person, may become, by adoption, the employee also of another, where that other person has the right of control of the workman in his employment.".

In Scribner's case, 120 NE 350. The Supreme Judicial Court of Massachusetts held: "Where a servant in the general employment of an ice company was injured while at work in the yard of a coal company to which the ice company let a pair of horses, a wagon and the servant as a driver, the latter taking his orders from the coal company, such servant was in the employment of the coal company when injured, and his remedy under the Workmen's Compensation Act, was against its insurer, not against the insurer of the ice company."

In the case of Robson v Martin et, 140 Atl. 338, the Supreme Court of Pennsylvania held: "Driver, hired and paid by owner of truck rented with driver to defendant, held employee of defendant."

On page 10 of the same brief of defendant in error, in the case quoted immediately above, in its opinion, the Supreme Court said: "III: It is a well recognized rule that where one may be in the general employ of another, yet he may, with respect to particular work, he transferred to the service of a third person, in such a way that he becomes, for the time being, the servant of that person with all the legal consequences of that relation * * *"

"Where, however, the letting of the vehicle and driver is intended not merely to secure the performance of some act of which the control of performance remains in the bailor, but this power of supervision and direction has been transferred to the one who hires, and who thereafter manages it during the period of hiring, the latter becomes responsible as master.

"The test is whether the truck and driver are engaged to work for the hirer in the undertaking during the course of which the accident occurs, and remains subject to his

direction and control independent of the original employer. If so, the temporary hirer becomes the master as to one who is for the time being the servant, and assumes the attendant responsibility."

In the case of Arnett v Hayes Wheel Company et, 166 NW 957, the Supreme Court of Michigan held:

"1. That a deceased servant was employed and paid by one of the defendants is not conclusive that at the time of his death he was in the employment of such defendant.

"2. As a person who avails himself of the use temporarily of the services of a servant regularly employed by another person may be liable as a master for the acts of such servant during temporary service, the test being whether in the particular service the servant is subject to the direction and control of his original master, or to that of the person to whom he is let or hired, a laborer employed and paid by a company in whose plant a blow pipe and duster arrestor system was being enlarged must, where working under the direction of the company enlarging the system, be deemed a servant of the latter, and not of the original company so that compensation on account of his death in an explosion should be made by the company enlarging the blow pipe and dust arrestor system."

On page 11 of the same brief, in the Ferrara's case, 169 NE 137, the Supreme Judicial Court of Massachusetts held:

"Driver of a team engaged in collection of ashes, who, though he had care and control of team, was controlled by company engaged in business of collecting ashes, as respects place where he was to work and way in which work was to be done, held to be employee of company * * *."

In the case of Cayll et v Industrial Commission, 179 NW 771, the Supreme Court of Wisconsin held:

"Where an excavation contractor's employee consented to be transferred to the service of a gas company laying pipe in the ditches dug by the contractor, and was injured while working for the gas company and under its control, the gas company and not the contractor, was liable for compensation * * * he being an employee of the gas company under an implied contract of employment within the common law rule, though he continued to work for the contractor one hour a day, and was continued on his payroll."

Presumably, it is of no particular importance as indicated by the decisions, whether Ray was a regular employee of McFadden and adopted for the occasion by the defendant, or a person engaged for the particular services as in the instant case.

On page 14 of the brief of defendant in error in the case of Snyder v Cigar Company, supra, it was held that:

"A workman who is in the general employment of some person, may become by adoption, the employee also of another, where that other person has the right of control of the workman in his employment."

In the case of Torsey, 153 Atl. 807, the Supreme Judicial Court of Maine held that:

"It is well settled law that the servant of a general employer may, with respect to a particular work, be transferred, with his own consent or acquiescence to the service of another so that he becomes the servant of the special employer. Consent or acquiescence in the change of employment may be inferred from the servant's acceptance of or obedience to orders given by the special employer or his representatives."

In the case of Westover v Hoover et, 129 NW 285, the Supreme Court of Nebraska held:

"A person who is in the general employment of one person may be temporarily in the service of another with respect to a particular transaction or piece of work, so that the relation of master and servant arises between them, even though the general employer may have an interest in the special work."

The Supreme Court of Wisconsin, in Seaman Body Corporation v Industrial Commission held:

"Relation of employer and employee exists between special employer and borrowed employee when latter consents to, and enters on, work for former, and special employer has power to control details, manner and duration of work."

In the case of Arnett v Hayes Wheel Company et, 166 NW 957, supra, the Supreme Court of Michigan held:

"As a person who avails himself of the use temporarily of the services of a servant regularly employed by another person may be liable as a master for the acts of such servant during temporary service, the test being whether in the particular service the servant is subject to the direction and

control of his original master, or to that of the person to whom he is let or hired, a laborer employed and paid by a company in whose plant a blow pipe and duster arrestor system was being enlarged must, where working under the direction of the company enlarging the system be deemed a servant of the latter, and not of the original company * * * "

Attention is also called to Robson v Martin, supra, wherein the court said:

"The test is whether the truck and driver are engaged to work for the hirer in the undertaking during the course of which the accident occures, and remains subject to his direction and control independent of the original employer. If so, the temporary hirer becomes the master as to one who is for the time being his servant, and assumes the attendant responsibility * * *."

Particularly applying to casual employment, it is said:

"2. Every person in the service of any firm or private corporation * * * but not including any person whose employment is but casual and not in the usual course of trade, business, profession or occupation of his employer."

It was so held by the Supreme Court of Minnesota in State ex City of Northfield v District Court, etc., 155 NW 103. In its opinion the court said:

"Johnson was engaged to work for the city at a wage of $2 per day, payable every Saturday. He was not hired for any specified length of time. His employment might continue a day or a week or several weeks or several months. It may or may not have been casual; this we do not decide * * * Respondent, when injured, was loading gravel for use in repairing and improving the streets of his employer, the city. That part of the compensation law relating to excepted cases, so far as is here material reads as follows:

'Nor shall the provisions of this act apply to actions or proceedings to recover damages or compensation for personal injuries sustained by domestic servants, farm laborers, or persons whose employment is casual and not in the usual course of the trade, business or profession or occupation of his employer.'

"The language of the statute leaves no room for construction. Though casual, if the employment is in the usual course of

the business of the employer the Compensation Act applies."

In Nedela v Mares Auto Co., 184 NW 885, the Supreme Court of Nebraska held:

"One who is employed to work in an automobile garage without any understanding as to the time of his employment, or of the particular character of the labor he is to perform, and assembles and sets up automobiles and performs such other labor in and about the garage as he is directed to do by the foreman, or manager, and such work is incident to and in the usual course of, the business, is held not to be casually employed within the meaning of the Employer's Liability Act."

Citations and quotations are found in brief of defendant, indicating decisions by courts adverse to those herein quoted. A somewhat exhaustive examination of authorities indicates however, that the decided trend and current of authority is as indicated by the quotations hereinbefore made.

Referring again to the evidence, it is suggested by counsel for the defendant, that Houck, the foreman, had no authority to discharge Ray. We see no particular difference between the employment of Ray and that of any other employee generally engaged in this work. The foreman, Houck, could not discharge Ray from his job as a teamster for McFadden, but he could discharge him from work upon this job as he could do with other employees.

It is not apparent that the reasonable recourse of an employer in any event, would be otherwise than to discharge from the work, an unsatisfactory employee. Ray was wholly under the direction of Houck as to the services required and manner of their performance. With this, McFadden had nothing to do.

The final conclusion reached by this court upon a consideration of the evidence, the statutes and the decisions of the courts of many states, upon the issue involved is that the decedent, Ray, was an employee of the defendant Telephone Company, injured in the course of his employment, and that his injury and resulting death arose out of the employment and that his widow, the plaintiff is entitled to participate in the fund provided by law for such use, and no prejudicial error being found, the judgment of the Court of Common Pleas is affirmed.

FARR and POLLOCK, JJ, concur in this judgment.