**BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF CINCINNATI, Plaintiff-Appellant, v. RHODES, State Auditor, et, Defendants-Appellees.**

Ohio Appeals, Tenth District, Franklin County.

No. 6009.   Decided June 9, 1959.

James W. Farrell, Jr., City Solicitor, Wallace M. Power, Chief Counsel, Cincinnati, for plaintiff-appellant.

Mark McElroy, Atty. Genl., Joseph S. Gill, Special Counsel, Columbus, for defendant-appellee School Employees Retirement Board.

(FESS, J, of the Sixth District, sitting by designation in the Tenth District.)

## OPINION

By DUFFY, J.

Plaintiff-appellant filed a petition for a declaratory judgment asking the Common Pleas Court of Franklin County to decide whether certain

bus drivers who drive buses under contracts with the Board of Education of their city are employees of the Board of Education within the meaning of the term as used in §3309.01 R. C. The matter was submitted to a judge of the Common Pleas Court on an agreed statement of fact, and it was decided by that court that the bus drivers were emyployees of the Board of Education, making the Board liable for certain payments to the School Employees Retirement System. From that decision the school board has appealed to this court.

The plaintiff-appellant states that the local school board enters into contracts with contract haulers for the transportation of children to its many schools. These contracts fall into three different categories: (1) the school board contracts with a corporation where several buses are used for the transportation of children; (2) the school board contracts with an individual who furnishes two or more buses for transportation; and (3) one contract is with an individual who furnishes one bus and one driver.

The specific question asked by the plaintiff-appellant is, are the drivers of these buses, furnished under contract with the contract haulers, employees within the meaning of §3309.01 (B) R. C., which section read as follows:

"(B) 'Employee' means any person regularly employed in the public schools of the state who is not a teacher as defined in division (A) of §3319.09 R. C.; and any person, not a faculty member, regularly employed in any school or college or other institution wholly controlled and managed, and wholly or partly supported by the state or any subdivision thereof, the board of trustees or other managing body of which shall accept the requirements and obligations of §§3309.01 to 3309.68 inclusive, R. C. In all cases of doubt the school employees retirement board shall determine whether any person is an employee, as defined in this division, and its decision shall be final. No employee shall be excluded from membership in the school employees retirement system because of membership in any other state retirement system established under the laws of this state unless such employee is receiving a disability allowance from such other retirement system."

The parties are in agreement that on December 17, 1948, the Retirement Board declared that after July 1, 1949, all of the contract drivers would be considered as employees for Retirement Board purposes.

The Attorney General of Ohio (in his Opinion No. 1371 of the Opinions of the Attorney General for 1937, Page 2309) advised the Retirement Board that the eligibility of the drivers for membership in the system depended upon whether they were "subject to the orders, control and supervision of the board of education as to the mode and manner of performing the work."

The Ohio courts have many times stated the test to be applied in determining whether or not an individual is an employee of a named employer. See Gillum v. Industrial Commission of Ohio, 141 Oh St 373; Councell v. Douglas, 163 Oh St 292; and Bobik v. Industrial Commission, 146 Oh St 187. It is apparent from those cases that the principal test to apply in determining whether or not an employer-employee relationship exists is the reservation of the right to control the manner or

means of doing the work by the person or company for whom the service is being performed. See also the discussion in Snyder, Admrx., v. The American Cigar Company, 22 C. C. (N. S.), 45, and **Ohio Bell Telephone Company v. Ray, 19 Abs 294.** It is apparent from these cases that it is possible for one who is in the general employ of one person to become, by a sort of adoption, the employee also of another.

From the copies of contracts entered as exhibits, along with the agreed statement of fact, it is apparent that the exact routing of the school buses was a decision for the principal of the school to make, and the routing always remained subject to any changes desired by the school board or principal of the school, which changes had only "to best serve the children." The drivers also agreed to observe carefully all standards required by statute or regulations for drivers.

**Sec. 3327.01 R. C.,** and subsequent sections in that chapter refer to school boards and the drivers of buses transporting pupils to and from school. From these sections it is apparent that it is the duty of the board to designate certain places as depots from which to gather children and to adopt and put in force a time schedule on which the buses shall be run. The school bus drivers must also be certified by the school board as to age, good moral character, and physical fitness for such a position

The control which the boards of education, by law and regulations, exert over the drivers of the school buses appears to control the manner and mode of transporting the children to and from school so as to make the relationship between the board and the drivers an employer-employee relationship.

The finding of the lower Court that the school bus drivers were employees within the meaning of §3309.01 (B) R. C., was correct, and the judgment should be affirmed.

BRYANT, PJ, concurs.
FESS, J, dissents.

## CONCURRING OPINION

By BRYANT, PJ.

As we see it, the judgment of the Franklin County Common Pleas Court was correct and must be affirmed. In addition to the arguments based upon what appears to us to be the agreed and actual control down to the smallest detail of the manner and means of executing such contracts, there is the express, clear and unambiguous definition of what is a "school employee" in §3309.01 (B) R. C., which on November 27, 1956, when the petition was filed, read in part as follows:

"(B) 'Employee' means any person regularly employed in the public schools of the state who is not a teacher * * *. In all cases of doubt the school employees retirement board shall determine whether any person is an employee, as defined in this division, **and its decision shall be final.** * * *" (Emphasis added.)

We have not been able to find, nor has it been pointed out to us, where there is any substantial difference, so far as this question is concerned, in the language used in the amended form of said **§3309.01 supra.**

**R. C.** As amended effective September 16, 1957, 127 **Ohio Laws 299** at **page 336,** this section in part now reads as follows:

"(B) 'Employee' means any person employed in the public schools of the state in a position for which he is not required to have a certificate (as teacher) issued pursuant to §§3319.22 to 3319.31 R. C. * * *. In all cases of doubt the school employees retirement board shall determine whether any person is an employee, as defined in this division, and its decision shall be final. * * *" (Words in parenthesis added.)

Here the state legislature has provided a definition and has granted authority in the first instance to the school employees retirement board to make a determination in all cases of doubt. It is further provided that decisions of the said board shall be final.

As we see it the legislature had full power and authority to impose these conditions involving as they do the expenditure of public funds by an agency of the public for a public purpose. As the rule and decision of the said retirement board would appear to apply equally to all school boards and school districts in all parts of the state, it should in our judgment be upheld.

## DISSENTING OPINION

By FESS, J.

This is an appeal on questions of law from a judgment entered by the Common Pleas Court in an action for declaratory judgment brought by the plaintiff Board of Education finding in favor of defendants and declaring that drivers of school busses owned and operated by contract carriers are employes of the Plaintiff within the purport and meaning of §3309.01 (B) R. C., and as such required to become members of the School Employees Retirement System, Chapter 3309 R. C.

Chapter 3327 R. C., requires boards of education to provide transportation for pupils to and from school. The provisions of this chapter require the adoption by boards of education of a time schedule incident to the conveyance as well as the designation of depots from which to gather children. Sec. 3327.10 R. C., provides that no person shall be employed as a driver of a school bus who has not given satisfactory and sufficient bond and who has not received a certificate that such person is twenty-one years of age and is of good moral character and is qualified physically and otherwise for such position.[1]

Provision is made for a physical examination of each driver by the board and the revocation of such certificate for improper conduct or neglect of duty resulting in the termination of such driver's contract.

Sec. 4511.76 R. C., requires the department of education, by and with the advice and consent of the director of highway safety, to adopt and enforce regulations to govern the operation of all school busses used for the transportation of school children, when owned and operated by

---

1. In an opinion rendered in 1945 (No. 425, p. 530) the Attorney General ruled that drivers of school busses who are not employed directly by the board of education but who are furnished by a contractor, are required to give bond but are not required to furnish the qualification certificate under the statute, but that by contract the board may require such certificate.

any school district or privately owned and operated under contract, which regulations shall by reference be made a part of any such contract.[2]

On the whole, the Regulations are mandatory in character, but many of the provisions are recommendations or suggestions to boards of education and supervisory officials. Such section further provides inter alia that every person employed under contract shall be subject to such regulations and that any person operating a school bus under contract who fails to comply therewith shall be guilty of a breach of contract and that such contract shall be cancelled by the responsible officers of such school district.

For a number of years, boards of education have utilized the services of so-called "contract bus drivers," who own and operate busses for transportation of pupils under several different types of contract. The bus owner may be a corporation or an individual who owns and operates two or more busses by means of drivers employed therefor, or an individual who owns but one bus but operates it by a driver employed by such owner, or an individual who owns and operates such bus himself.

The provisions of the Code, as well as the safety regulations, apply without distinction to the driver of a school bus employed directly by a Board of Education and to one employed by a contractor. It is to be observed, however, that §4511.76 R. C., recognizes the transportation of pupils by privately-owned and operated busses under contract.

Although the terms of employment between the contractor and bus drivers do not appear in the agreed statement of facts, it is to be inferred that the contractor has the right to hire, fix the wages, hours and other terms of employment, and to discharge his drivers. Upon such hiring, such driver is required to give bond and furnish a certificate of qualification. Upon revocation of his certificate "the said driver's contract shall be thereby terminated and rendered void." Presumably

---

2. The current regulations adopted pursuant to the provisions of Sec. 4511.76 R. C., deal with the following subjects:
1. Driver qualification.
2. Maximum hours of driving.
3. Traffic law observance.
4. Designation of all stops by board of education.
5. Time schedule adopted by board of education.
6. Accurate time piece.
7. Detailed safety instructions for loading and unloading.
8. Load distribution.
9. Driver's supervision of pupil conduct and assignment of seats.
10. Overloading.
11. Transportation of band instruments and other equipment.
12. Safety patrols.
13. Recommendation of use of bus patrol members.
14. Traffic regulations which appear to apply standards more rigorous than those provided by statute.
15. Regulations for extra-curricular or non-routine use of busses.
16. Bus inspection and driver truancy.

the driver's employment is subject to this provision, but it is to be noted that the driver is not discharged by the board but his contract is cancelled. Upon failure of a contractor to comply with the safety rules and regulations, the contract is likewise cancelled for breach thereof.

Under one of the three contracts introduced as an exhibit in this case, the contractor agrees to render transportation and other services according to the proposal of the Board and specifications attached thereto (which proposal and specifications are not included in the agreed statements of facts) upon the following terms and conditions:

a. In consideration of the sum of $231.00 for each school day, the contractor agrees to furnish and operate at his own expense eleven (11) school busses transporting 250 children, more or less, to and from a certain school building each school day for a period of three school years over routes decided upon by the contractor and the principal of said school, in accordance with the specifications of the board. "These routes shall serve the entire area of the Cincinnati school district except the areas served by the Mt. Washington and Saylor Park elementary schools."

b. Provision is made for additional services on the part of the contractor, who also agrees to observe carefully standards for drivers, equipment and operation required by statute or by regulations of legally-constituted authorities which are made part of such contract.

c. The Board reserves the right to change any of the routes or roads or to transfer pupils from one conveyance to another during the period of the contract.

d. Contractor agrees to submit to the clerk of the Board certificates of workmen's compensation insurance coverage each six (6) months during the contract period.

The second contract appearing as an exhibit provides for the operation of five (5) school busses transporting 265 children living more than two (2) miles from Mt. Washington school in certain specified areas. This contract also provides that the exact mileage and routing within the listed areas are to be subject to the instructions of the principal of the school, to be determined in the best interests of the children to be transported. In somewhat different phraseology, the above provisions of the first contract are included.

The third contract relates to the furnishing of one (1) school bus transporting 20 to 30 children living more than two (2) miles from the Kirby Road school building and its provisions follow substantially those of the second contract. The agreed statement of facts does not disclose whether the contractor drives the bus himself or hires a driver, but presumably this bus is operated by a driver hired by the owner.

The contracts have no default clause nor do they reserve to the school board any right to supervise the actual transportation or to hire or fire drivers. No mention is made in the contracts as to the amount of compensation to be paid drivers.[3]

3. In reaching a conclusion that drivers of contract bus operators were employees of the Board of Education, the retirement board, confronted with the problem of determining the amount of contributions to be made by such

As heretofore indicated, bus drivers (whether publicly or privately employed) are required to be qualified under §3327.10 R. C. The school board may designate depots and adopt the time schedule. Under the terms of the first contract above referred to, which is the major one involved in this litigation, the routes are decided upon by the contractor and the principal of the school in accordance with the specifications of the board of education. The board is also authorized to procure liability and property damage insurance covering each bus and accident insurance covering all pupils transported under authority of such board. Sec. 3327.09 R. C.[4]

Except as provided by law or the safety regulations, the contractor providing transportation is free to hire, determine the wages, supervise, discipline and discharge his drivers. The contractor, not the board, is also free to assign qualified drivers to particular routes or interchange them. The contractor providing the transportation has supervision over the repair and condition of the busses, is free to purchase any kind of bus complying with the regulations, to purchase his fuel and other supplies on such terms and from such persons as he may desire, and possibly to employ his busses in non-educational transportation.[5]

Thus, in all respects not limited by law, regulations, or his contract, the contractor is independent of the school board.

In a comprehensive opinion rendered the Retirement Board by the Attorney General in 1937 (No. 1371, p. 2309) it was held:

"The eligibility for membership in the State Public School Employes Retirement system, or a school bus driver who owns his own equipment and under contract to transport pupils for a board of education depends wholly upon whether or not the relationship existing between the board of education and the bus driver is that of employer and employe, and

---

employee and the board of education, resolved on March 17, 1938, that not over 50% of the contract be considered as personal service salary for contract bus drivers, and also that membership in the retirement system be denied a contract bus driver even though eligible for membership, under Attorney General's Opinion No. 1371 (1937), if said contractor did not drive a bus. However, on September 23, 1955, a further resolution was adopted providing that personal service salary should not be less than 50% nor in excess of 65% of the total amount paid for each vehicle covered by a contract, and repealed the resolution adopted March 17, 1938. The adoption of this formula has been approved by the Attorney General, 1956 OAG No. 6355, p. 196.

4. The agreed statement of facts does not disclose whether such insurance is carried by the plaintiff in this case. The Attorney General has ruled that a board of education is without authority under Secs. 3327.09 or 3313.201 R. C., to procure insurance against liability on the part of contractors for transporting pupils. OAG 1958, No. 1811.

5. The regulations provide that no per pupil charge may ever be made for transporting in any school bus operating with gratis plates. The regulations also state that contract busses are excluded from interstate trips under ICC Ruling No. 80, Sec. 203 (b).

can only be determined by the terms and conditions of the specific contract existing between the board of education and the bus driver.

"Where a board of education enters into a contract with a bus driver, whereby the bus driver is to furnish the bus and transport a certain number of pupils to and from school over certain designated routes, such bus driver is an 'employe,' and eligible to membership in the State Public School Employes' Retirement System, if the terms and conditions of the contract are such: that the bus driver can not perform the work of transporting the pupils according to his own ideas, but, is subject to the orders, control and supervision of the board of education as to the mode and manner of performing the work of transporting the pupils; · and that, he must submit to, and be guided by, the direction of the board of education as to the details of transporting the pupils and cannot refuse to obey such directions. If, however, the terms and conditions of the contract are such, that the bus driver may, in accordance with the specifications as to route, time and number. of pupils set forth in the contract, perform the work of transporting the pupils and all details thereof, according to his own ideas, without being subject to the orders or control of the board of education as to the mode and manner of transporting the pupils, and the board of education has not reserved any supervision over the bus driver while performing the work, except to ascertain whether or not he is performing the work of transporting the pupils in accordance with the specifications set forth in the contract as to time, number of pupils and route, then said bus driver may be said to be an independent contractor and not eligible to membership in the State Public School Employes' Retirement System."

The writer is of the opinion that the rule prescribed by the Attorney General in 1937 is correct and is premised upon sound principles of the law of master and servant. However, it is said in appellees' brief that the rule proved to be unworkable. "That opinion advised the Retirement Board that contract drivers were members of the system if they were 'subject to the orders, control and supervision of the board of education as to the mode and manner of performing the work.' To apply this opinion literally would require the Board to maintain a combination detective agency and law office to investigate the terms of and performance under each contract in the State, and to interpret that conduct in terms of the Attorney General's opinion."

"It apparently became clear to the Board after eleven years of ob-·servation that all of the contract drivers in question work under the control of boards of education as servants, and that all drivers should be subject to the same rule of membership." Appellee's brief.

Sec. 7896-64 GC (§3309.01 R. C.), provides:

" 'Employee' means any person regularly employed in the public schools of the state who is not a teacher * * *. In all cases of doubt the school employees retirement board shall determine whether any person is an employee, as defined in this division, and its decision shall be final."
* * *

Purporting to act pursuant to the statute, the retirement board on December 17, 1948, adopted the following resolution to become effective on July 1, 1949:

"**Bus Drivers**

"1. The following persons regularly driving vehicles used in the transportation of pupils for a board of education shall be considered as employes under the provisions of §7896-64 GC.:

"a. The driver of a school bus which belongs to the board of education.

"b. The driver of a school bus who has contracted with the board of education to furnish and drive the school bus.

"c. The driver of a school bus owned or controlled by the one who has a contract with the board of education to furnish the bus and driver."[6]

Paragraph (c) is the provision under attack in the instant case.

Sec. 3309.01 R. C., provides that the decision of the retirement board in all cases of doubt shall be final, but this does not empower such board to make a final determination of the status of an employee contrary to the facts or the law. Nor does the attempted justification of the adoption of a blanket coverage into public employment on the ground of expediency in the performance of administrative duties appeal to the writer. In all cases of doubt, the board is required to determine whether any person is an employee. As the Attorney General properly ruled in 1937, the status of a bus driver can only be determined by the terms and conditions of the specific contract between the board of education and the driver. The retirement board could well adopt a rule incorporating the terms and conditions prescribed by the Attorney General in his 1937 opinion as to the amenability of drivers to the provisions of the retirement act for the guidance of boards of education in complying with such act, but paragraph "c" of the 1948 resolution requires that all bus drivers, regardless of control by their employer or the board of education, become members of the retirement system.

The question whether one is an employee or an independent contractor has been considered in many cases, and various tests have been applied in determining it, although it has been said that it is impossible to lay down a rule by which the status of men working and contracting together can be clearly defined in all cases as employees or independent contractors, for each case must depend on its own facts, and ordinarily no one feature of the relation is determinative, but all must be considered together; and ordinarily it is said to be a question of fact. 42 Corpus Juris Secundum 638, quoted with approval in **Bobik v. Industrial Commission, 146 Oh St 187, 192, 64 N. E. (2d), 829.**

The fundamental question presented upon this appeal is whether upon this record the driver of a contract bus is actually the employee of the board of education or of the contractor. Whether one is an independent contractor or in service depends upon the facts of each case. The principal test applied to determine the character of the arrangement is that if the employer reserves the right to control the manner or

6. In opinion No. 6355, rendered in 1956, the Attorney General ruled that the retirement board did not exceed its authority in adopting such resolution.

means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is responsible to the employer only for the result, an independent contractor relationship is thereby created. **Gillum v. Industrial Commission, 141 Oh St 373, 48 N. E. (2d), 234.** Thus, where the owner of a truck contracted to haul a certain lot of logs for a certain price, choosing his own manner and means of accomplishing the result, the reservation of the right by the employer to designate that certain types or sizes of logs be hauled as needed does not in itself make such truck owner a servant for the reason that such right of control relates to the result and not to the manner or means of accomplishing the result. Gillum v. Commission, supra. See also **Clark v. Fry, 8 Oh St 358; Pickens & Plummer v. Diecker & Bro., 21 Oh St 212, 215; Hughes v. Railway Company, 39 Oh St 461; Klar v. Erie Rd. Co., 118 Oh St 612, 162 N. E. 793; Industrial Commission v. McAdow, 126 Oh St 198, 184 N. E. 759; Bobik v. Industrial Commission, 146 Oh St 187,** 64 N. E. (2d), 829; Ludlow v. Industrial Commission, 235 Pac., 884.[7]

In the opinion in the Gillum case, the court quotes with approval from 1 Restatement of the Law of Agency, Section 2:

"(1) A master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service.

"(2) A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

"(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking.'"

The opinion also quotes with approval from 27 American Jurisprudence 488:

"As a practical proposition, every contract for work to be done reserves to the employer a certain degree of control, at least to enable him to see that the contract is performed according to specifications. * * * Thus, a person employed to perform certain work is not necessarily a mere servant because the contract provides that the work shall be subject to the approval or satisfaction of the employer. Such a provision is not an assumption by the employer of the right to control the person employed as to the details or method of doing the work, but is only a provision that the employer may see that the contract is carried out according to the plans."

---

7. For school bus driver cases see also: Arthur v. Marble Rock Dist., 228 N. W. 70; Ludlow v. Industrial Commission, 235 Pac., 884 and Daves v. Hain (Ala. S. C.) 1937, 178 So. 63, reversing C. of A. 178 S. 59, and holding one transporting children to be an independent contractor. Contra: Ridgdell v. Tangipoha Parish Board (La. 1944), 17 So. 2d, 55, affd. 21 So. 2d, 77, wherein driver was directly employed by board of education.

8. There is no substantial variation in the Restatement record, other than the addition to paragraph 3 "He may or may not be an agent."

In the instant case, the drivers of busses operate under rigid regulations and specifications imposed by law under the supervision of their employer, but there is nothing in the record other than these regulations disclosing that the board of education exercises or has the right to control the physical conduct of the driver.

It is also held that the vital test is the right of control over the work by the employer. **Industrial Commission v. Laird, 126 Oh St 617, 186 N. E. 718.** The relationship of principal and agent or master and servant is distinguished from the relationship of employer and independent contractor by the following test: Did the employer retain control, or the right to control, the mode and manner of doing the work contracted for? If he did, the relationship is that of principal and agent or master and servant. If he did not but is interested merely in the ultimate result to be accomplished, the relationship is that of employer and independent contractor. **Councell v. Douglass, 163 Oh St 292, 126 N. E. (2d), 597, Cf. Van Meter v. Public Utilities Commission of Ohio, 165 Oh St 391, 396-397, 135 N. E. (2d), 848.**

Right of control is also an essential factor in determining the status of a loaned servant. When one party loans his servant to another for a particular employment in the business and under the direction of the latter, the servant, for anything done in that employment, must be regarded as the servant of the party to whom he is loaned, although he remains the general servant of the party who loaned him. **Halkias v. Wilkoff Company, 141 Oh St 139, 47 N. E. (2d), 199.** But where an employer sends his employes with employers of another employer to perform the work of the employee's general employer, and where, further, the sole work to be performed by the employee is that of his employer and the only authority of the other's employees to direct the loaned employee is confined to showing him the work to be done, such employee is not legally under the control and direction of the other employer. **Giovinale v. Steel Corporation, 151 Oh St 161, 84 N. E. (2d), 904.**

Under the contracts involved in the instant case, the contractor assumed the responsibility of requiring his drivers to comply with the applicable provisions of law and regulations governing the operation of school busses. The record before us for review fails to disclose that the contractors relinquished this responsibility or the right of control incident thereto to the board of education.

Appellees contend that since the resolution of the retirement board was adopted in 1948, it should be sustained under the doctrine of legislative acquiescence. Administrative interpretation of a given law, while not conclusive, is, if long continued, to be reckoned with most seriously and is not to be disregarded and set aside unless judicial construction makes it imperative to do so. **Industrial Commission v. Brown, 92 Oh St 309, 311, 110 N. E. 744, 745; State, ex rel. v. Brown, 121 Oh St 73, 166 N. E. 903; State, ex rel. v. Underhill, 141 Oh St 128, 132, 46 N. E. (2d), 861.** This principle is applicable in the interpretation and construction of the meaning of doubtful phraseology employed in questioned statutes, but may not be applied toward sustaining an administrative promulgation legislative in character belonging exclusively to the General Assembly.

Weber v. Board of Health, 148 Oh St 368, 403, 74 N. E. (2d), 331; **Wetterer v. Board of Health**, 167 Oh St 127, 146 N. E. (2d), 846. Under the 1948 resolution, the driver of a school bus owned or controlled by the one who has a contract with the board of education to furnish the bus and the driver is amenable to the provisions of the retirement act regardless of whether the board of education controls or has the right to control the physical conduct of such driver incident to the performance of his work.

In the instant case, the retirement board made no actual finding that the appellant Board of Education reserved the right to exercise physical control over the bus drivers, but arbitrarily adopted a general rule that all drivers of school busses owned or controlled by a person who has a contract with the Board of Education to furnish the bus and driver, regardless of whether or not the Board of Education exercised or reserved the right to control the physical conduct of the drivers, were employes of the boards of education.

In my opinion, the judgment of the court of common pleas should be reversed and a final declaratory judgment entered herein for the plaintiff Board of Education.