LINDEN, Appellant,

v.

CINCINNATI CYCLONES HOCKEY CLUB, L.P. et al., Appellees.

[Cite as *Linden v. Cincinnati Cyclones Hockey Club, L.P.* (2000), 138 Ohio App.3d 634.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–990665.

Decided June 30, 2000.

*Patrick J. Alcox,* for appellant.

*Jo Ann F. Wasil,* for appellee Cincinnati Cyclones Hockey Club; *Jane P. Wilson,* for appellee Florida Panthers Hockey Club; *Betty D. Montgomery,* Attorney General, and *Steven P. Fixler,* Assistant Attorney General, for appellees Ohio Bureau of Workers' Compensation and Industrial Commission of Ohio.

HILDEBRANDT, Presiding Judge.

Plaintiff-appellant Jamie Linden appeals from the trial court's entry of summary judgment in favor of all defendants-appellees on Linden's application for participation in Ohio's workers' compensation fund. Although the trial court did not give any reason for its decision to grant summary judgment, the record

demonstrates that the defendants-appellees had sought summary judgment on the grounds that Linden was not an employee of the Cincinnati Cyclones at the time of his injury, that he had signed an agreement with the Florida Panthers to be bound by Florida law for all workers' compensation claims, and that his employment was not localized in Ohio. Because we believe that genuine issues of material fact exist in this case, we reverse the judgment of the trial court and remand for further proceedings.

## I. STANDARD OF REVIEW

This court reviews the grant of summary judgment *de novo*. In seeking summary judgment, the moving party bears the burden of demonstrating that there remain no genuine issues of fact.[1] The trial court, in ruling on a motion for summary judgment, must construe the evidence most favorably to the nonmoving party, in this case Linden.[2]

For the defendants to prevail on their motions for summary judgment in this case, they had to show that (1) no genuine issue as to any material fact remained to be litigated; (2) they were entitled to judgment as a matter of law; and (3) the evidence, when viewed most strongly in favor of Linden, supported only one conclusion, and that conclusion was adverse to Linden.[3]

## II. FACTS

The facts, construed in the light most favorable to Linden, are as follows: Jamie Linden is a Canadian citizen who was injured on March 7, 1995, while employed as a hockey player in the United States. At the time of his injury, he was playing hockey in a game in Peoria, Illinois, for the Cincinnati Cyclones. The Florida Panthers, a hockey club based in Florida, paid all of the medical expenses and the associated rehabilitation expenses for treatment of Linden's injury from March 7, 1995, until August 1995.

Linden was contacted by someone in the Florida Panthers' organization in 1993 to attend training camp with the Panthers in the fall of 1993. The Florida Panthers Hockey Club is a member of the National Hockey League, the only major hockey league in the United States. Linden attended the Panthers' training camp for approximately ten days, when he and other young players were notified that they were being sent to the Panthers' minor league affiliate team, the Cincinnati Cyclones. The Panthers had a written agreement with the

---

1. See *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801.

2. See *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 274. See, also, *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 687 N.E.2d 735.

3. See Civ.R. 56(C); *Temple, supra*, at 327, 4 O.O.3d at 471–472, 364 N.E.2d at 274.

Cincinnati Cyclones, a member of the International Hockey League, to supply the Cyclones with ten hockey players and two goaltenders. The Panthers paid the players' salaries, but the Cyclones paid the players' per-diem expenses and travel expenses. The Cyclones also agreed to pay $300,000 over the course of the season to the Panthers.

The Panthers and Linden signed a "National Hockey League Standard Player's Contract" sometime in October 1993. The contract was for three seasons and set forth Linden's salary for each season. The contract specifically stated, "It is mutually agreed that the Club shall have the right to sell, assign, exchange, and transfer this contract, and to loan the Player's services to any other professional hockey club, and the Player agrees to accept and be bound by such sale, exchange, assignment, transfer or loan, and will faithfully perform and carry out this contract with the same purpose and effect as if it had been entered into by the Player and such other club." The contract further stated that if the contract were assigned, exchanged, lent, or otherwise transferred to a club in another league, Linden would be paid a different salary than that set forth for playing in the National Hockey League. Linden testified that he understood that he would be paid at the higher salary when he played in the National Hockey League and at the lower when he played for a minor league hockey team, and the record demonstrates that he was so paid.

Linden testified that, during the training camp for the Panthers, he and other players were notified that they were being sent to the Cincinnati Cyclones. The effect of this assignment was that Linden and the others would play hockey as members of the Cincinnati Cyclones hockey club but could be recalled to play with the Panthers, at the discretion of the Panthers. Linden was listed on the roster of the Cincinnati Cyclones, and every game that he played in the 1993–1994 hockey season was played as a member of the Cincinnati Cyclones.

Linden never had an express agreement or contract with the Cyclones. As stated above, he did sign a contract and addendum with the Florida Panthers. The date that the contract and addendum were signed is in dispute. The contract states that it was to commence on October 1, 1993. The contract also states that it was signed "this 4th day of October A.D.1993." However, it contains a date stamp of October 20, 1993, which is the date that the contract was filed with the National Hockey League. A representative of the National Hockey League signed the contract on October 21, 1993.

The record also contains a letter dated October 12, 1993, from the Florida Panthers to the General Manager of the Cincinnati Cyclones. It states in part, "Enclosed are Standard Player's Contracts and addendums for JAMIE LINDEN and BRAD SMYTH to be signed and witnessed." Linden testified in his deposition that someone from the Cyclones gave him a copy of the contract and

addendum, that he signed them at the Cincinnati Gardens in Cincinnati, Ohio, and that they were returned to Florida for signatures by the Panthers and the NHL. According to Linden, he signed the contract and addendum on October 4, 1993. He stated that he recalled the date that he signed the contract because he had made certain that he had a written contract in place before the beginning of the Cyclones hockey season in 1993. He disputed that he signed the contract as late as or later than October 12, 1993.

Another document signed by the Florida Panthers and Linden is at issue in this case. The parties refer to the form as a "C–112," and the record shows that the document is a standard form created by the Ohio Bureau of Workers' Compensation to allow parties to comply with the provisions of R.C. 4123.54. As relevant here, R.C. 4123.54 states, "Whenever * * * there is a possibility of conflict with respect to the application of workers' compensation laws because the contract of employment is entered into and all or some portion of the work is or is to be performed in a state or states other than Ohio, the employer and employee may agree to be bound by the laws of this state or by the laws of some other state in which all or some portion of the work of the employee is to be performed. The agreement shall be in writing and shall be filed with the bureau of workers' compensation within ten days after it is executed * * *."

The C–112 may be filed with the bureau to comply with R.C. 4123.54. Here, the form states that the state law of choice was Florida and that the agreement was executed in Florida. The parties dispute the date that the C–112 form was executed. The form contains a date of October 1, 1993. It is date-stamped as being filed with the bureau of workers' compensation on October 26, 1993. There are no dates next to the signature of Linden or of the Panthers' representative. Linden testified that he signed the C–112 at the same time he signed the player's contract and addendum. Although the Panthers claim that the C–112 was sent to Linden on October 12, 1993, with the contract and addendum, there is no mention of the C–112 in the October 12, 1993 cover letter.

At the beginning of the 1994–1995 season, Linden was again invited to the Panthers' training camp. Again, he was instructed by the Panthers to report to the Cyclones to play hockey in Cincinnati. Linden was recalled by the Panthers for several games in January 1995, and was then sent back to the Cyclones. On March 7, 1995, Linden injured his knee while playing a game as a member of the Cyclones in Peoria, Illinois. The Panthers allegedly filed a "Notice of Injury" in Florida, although the form does not indicate by stamp or otherwise that it was ever received by the Florida Division of Workers' Compensation. The Panthers continued to pay Linden's salary in accordance with his contract through the 1994–1995 season, and they paid all of the medical expenses incurred by Linden in the treatment of his injury, including surgery and rehabilitation.

In 1997, Linden filed an application for payment of compensation and medical benefits with the Ohio Bureau of Workers' Compensation. The bureau denied the claim on the grounds that Linden had failed to establish that he was an employee of the Cincinnati Cyclones, and that, as an employee of the Panthers, Linden had executed a valid C–112 selecting Florida law for the evaluation of his claim. Linden appealed to the trial court, which granted summary judgment in favor of the Cyclones and the Panthers, apparently on the same grounds.

III. "THE TRIAL COURT IMPROPERLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS ON THE ISSUE OF THE IDENTITY OF LINDEN'S EMPLOYER."

■ The defendants argued, and the trial court apparently agreed, that the Panthers hockey club and not the Cyclones hockey club was Linden's employer for the purposes of Ohio's workers' compensation laws. However, we believe that the identity of Linden's employer for the purposes of workers' compensation benefits is a genuine issue of material fact.

At the heart of this inquiry is the proper interpretation of the Ohio Supreme Court's decisions relating to temporary and loaned employees. In *Daniels v. MacGregor*,[4] Daniels was employed by Manpower, Inc., which provided temporary help to individuals and companies. At the request of a customer, Manpower would send an employee to the premises of the customer to perform skilled or unskilled tasks at the direction of the customer. Manpower retained the right to hire and discharge employees and to determine which of its employees were assigned to its customers. It reserved the right to remove and reassign employees from one customer to another during the course of the work day.

Manpower's customers paid Manpower a fixed hourly rate for the services of Manpower's employees. The customers made no payments directly to the employees. Manpower paid all taxes and workers' compensation premiums for its employees.

While working for MacGregor, a customer of Manpower, Daniels was injured. The evidence showed that all aspects of the work performed by Daniels were controlled by MacGregor. Daniels filed a workers' compensation claim through Manpower for his injuries, and then sued MacGregor for negligence. The issue for the Supreme Court of Ohio was whether MacGregor was the "employer" of Daniels for purposes of the immunity provisions of the Workers' Compensation Act. The court held:

"Where, as in the instant case, an employer employs an employee with the understanding that the employee is to be paid only by the employer and at a

---

4. (1965), 2 Ohio St.2d 89, 31 O.O.2d 141, 206 N.E.2d 554.

certain hourly rate to work for a customer of the employer and where it is understood that that customer is to have the right to control the manner or means of performing the work, *such employee in doing that work is an employee of the customer within the meaning of the Workmen's Compensation Act;* and where such customer has complied with the provisions of the Workmen's Compensation Act, he will not be liable to respond in damages for any injury received by such employee in the course of or arising out of that work for such customer."[5] (Emphasis added.)

Here, Linden's contract with the Panthers specifically allowed the Panthers to lend or assign Linden to another team, and the Panthers assigned Linden to work for the Cincinnati Cyclones. Under the contract, Linden was required to work for the Cyclones as if he had signed a contract directly with them.

The Bureau of Workers' Compensation held that the *Daniels* analysis controlled the disposition of this case, and that *Daniels* stood for the proposition that a loaned or temporary employee is an employee of the customer only for purposes of the immunity provided to an employer under the Workers' Compensation Act. For all other issues, including coverage under the Act, the loaned employee should be considered an employee of the lending or temporary agency. According to the bureau, *Daniels* has not been extended to situations such as that involved here.

However, the Supreme Court in *Daniels* relied on an earlier case, *Bobik v. Industrial Commission of Ohio,*[6] that addressed the very issue in this case. In *Bobik,* a truck driver worked for Muni, who leased trucks and drivers to his customers. Bobik was assigned by Muni to drive a truck for Aztec Lines, Inc. When he was injured while transporting goods for Aztec, Bobik filed a claim for compensation with the Industrial Commission, naming Aztec as his employer. The commission held that the record failed to establish that Bobik was an employee of Aztec within the meaning of the Workmen's Compensation Act. The Supreme Court of Ohio reversed.

The issue, according the court, was "the right of control as to the manner and means of performing the work."[7] Although Aztec did not pay Bobik for his work, it supplied the permits and equipment, other than the truck, that Bobik needed to transport its goods; Bobik worked for Aztec for eight months, reporting to an employee of Aztec for his work assignments; and Aztec designat-

---

5. *Daniels, supra,* at 92, 31 O.O.2d at 143, 206 N.E.2d at 556.

6. (1946), 146 Ohio St. 187, 32 O.O. 167, 64 N.E.2d 829.

7. *Bobik, supra,* at 190, 32 O.O. at 169, 64 N.E.2d at 831.

ed the route that Bobik was to follow in transporting its goods. Thus, the court held, Bobik was an employee of Aztec at the time of his injury.[8]

*Bobik* has not been overruled or limited. The court in *Daniels,* in fact, cited *Bobik* as authority. The fact pattern in this case is the same as that in *Daniels* and *Bobik.* The Panthers employed Linden, but retained the authority to assign him to work on a daily basis for another team, the Cincinnati Cyclones. The Cyclones can be considered Linden's employer if the Cyclones controlled the manner and means of Linden's work.

Construing the evidence in the light most favorable to Linden, as we are bound to do under Civ.R. 56, we hold that the Cyclones and Panthers failed to establish the absence of genuine issues of material fact regarding whether the Cyclones controlled the manner and means of Linden's work. The evidence shows that Linden was listed on the roster of the Cyclones at the time of his injury and that he was playing as a member of the Cyclones when he was injured. The evidence shows that the Cyclones provided his uniform and some of his equipment; set the time, place and manner of the practices that Linden attended; controlled his playing time during the games that he played for them; directed his transportation to and from games; and paid his per-diem expenses. Linden stated that he had daily contact with the Cyclones' management, but spoke only once a month to members of the Panthers' management.

The fact that the Cyclones did not have a contract with Linden, could not control when and whether the Panthers would call him to play in Florida, did not pay workers' compensation premiums for him, and did not pay his salary directly did not, under the reasoning in *Bobik* and *Daniels,* necessarily mean that Linden was not an employee of the Cyclones for the purposes of the Workers' Compensation Act, when the Cyclones otherwise controlled the manner and means of Linden's day-to-day work.[9] Genuine issues of material fact relating to whether the Cyclones controlled the manner and means of Linden's work remain to be decided.

---

8. *Id.* at 191, 32 O.O. at 169, 64 N.E.2d at 831–832. See, also, *Bd. of Edu. v. Rhodes* (1959), 109 Ohio App. 415, 417, 11 O.O.2d 374, 375–376, 162 N.E.2d 888, 889 (citing *Bobik,* court held that whether employee-employer relationship exists depends on right to control manner and means of work; person who is in the general employ of one may become the employee of another if the right to control work exists).

9. See *State ex rel. Newman v. Indus. Comm.* (1997), 77 Ohio St.3d 271, 673 N.E.2d 1301 (control of manner and means of work shows employment relationship between employer and loaned employee); see, also, *Foran v. Fisher Foods, Inc.* (1985), 17 Ohio St.3d 193, 17 OBR 430, 478 N.E.2d 998; *Vandriest v. Midlem* (1983), 6 Ohio St.3d 183, 6 OBR 239, 452 N.E.2d 321; *Campbell v. Cent. Terminal Warehouse* (1978), 56 Ohio St.2d 173, 10 O.O.3d 342, 383 N.E.2d 135.

## IV. "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE PANTHERS."

■ Even if Linden were an employee of the Panthers and not the Cyclones, the trial court erred in granting summary judgment in favor of the Panthers on Linden's application for workers' compensation benefits. The Panthers claim that Linden is not entitled to benefits under Ohio's workers' compensation statutes because Linden and the Panthers filed the C–112 form and thereby selected Florida as the proper state for the administration of benefits. However, genuine issues of material fact exist as to the validity of the C–112.

■ The statute specifically requires that an agreement to be bound by the workers' compensation laws of another state must be in writing and "shall be filed with the bureau of workers' compensation within ten days after it is executed." R.C. 4123.54. Generally, literal and full compliance with the statute is necessary to give effect to an agreement electing the application of another state's laws.[10] The existence of an intent to be bound by another state's laws is not enough.[11]

Here, genuine issues of material fact exist as to whether the C–112 was filed within ten days of its execution. On a summary-judgment motion, all inferences must be made in the nonmoving party's favor. Linden testified that he signed the C–112 before the start of the Cyclones season on October 4, 1993. The form contains a date of October 1, 1993. It was not filed with the bureau until October 26, 1993. Although the Panthers claim that the C–112 was sent with the player's contract and addendum on October 12, 1993, no mention of the C–112 is made in the cover letter. When the evidence is construed and all inferences from the evidence made in Linden's favor on this issue, we hold that genuine issues of material fact exist as to the validity of the election of another state's coverage of Linden's injury.

Without the C–112, the Panthers would qualify as an employer under R.C. 4123.01(B)(2), which states that all employers are subject to its provisions and defines an "employer" as "[e]very person, firm, and private corporation * * * that (a) has in service one or more employees regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written * * *." It is undisputed that the Panthers and Linden had an

---

**10.** See *Steely v. Boweil Storage & Transit Co.* (1989), 65 Ohio App.3d 161, 163, 583 N.E.2d 354, 355; *Skiba v. Mayfield* (1989), 61 Ohio App.3d 373, 378–379, 572 N.E.2d 808, 811–812; *Banta v. Daugherty* (1980), 70 Ohio App.2d 78, 80, 24 O.O.3d 95, 96, 434 N.E.2d 1103, 1105.

**11.** See *Banta, supra,* at 80, 24 O.O.3d at 96, 434 N.E.2d at 1105 (where agreement to be bound by another state's laws was not filed with bureau within ten days of execution, agreement did not comply with statute and did not prevent application of Ohio law to plaintiff's claim for workers' compensation benefits).

express employment contract, and that Linden was assigned by the Panthers to work in Ohio.

## V. "GENUINE ISSUES OF MATERIAL FACT EXIST REGARDING WHETHER LINDEN'S EMPLOYMENT WAS LOCALIZED IN OHIO."

The defendants also argued in their motion for summary judgment that Linden's employment was not "localized" in Ohio, and that he did not have sufficient contacts with Ohio to invoke the jurisdiction of the Bureau of Workers' Compensation. When an employment relationship consists of elements occurring both within and without the state of Ohio, courts have looked at whether the employment is "localized" in Ohio to determine whether the employee falls within the ambit of Ohio's workers' compensation statutes.[12]

In making this determination, the courts look at (1) where the employment contract was executed; (2) where the employee's name is included on the payroll reports; (3) where the injury occurred; (4) the employee's residence; (5) where the employee works; (6) whether the employee can receive workers' compensation benefits elsewhere; (7) the relationship between the employee's work and the employer's place of business; and (8) which state has the primary interest in the employee.[13] Whether an employee has sufficient contacts with Ohio is determined on a case-by-case basis.[14]

In this case, the employment contract was executed partly in Ohio (by Linden) and partly in Florida (by the Panthers). The evidence establishes that the Panthers did not include any hockey players on Ohio payrolls, but there is no evidence that Linden was listed or included on the payroll of any other state. The injury occurred in Illinois. During the term of the employment contract, Linden lived in Ohio and Kentucky, and he was living in Kentucky at the time of the accident. During the 1994–1995 hockey season, Linden worked in Ohio, practicing with the Cyclones and playing games in Ohio and numerous other states. For a short period, he worked in Florida.

The record does not contain evidence of whether Linden could obtain workers' compensation benefits from some state other than Ohio. The defendants submitted evidence that the Panthers had completed a Florida "Notice of Injury" form when Linden was injured, but Linden never received workers' compensation benefits from Florida. The Panthers paid the expenses related to his injury.

---

12. See *Indus. Comm. v. Gardinio* (1929), 119 Ohio St. 539, 164 N.E. 758; *Prendergast v. Indus. Comm.* (1940), 136 Ohio St. 535, 17 O.O. 190, 27 N.E.2d 235; *State ex rel. Stanadyne, Inc. v. Indus. Comm.* (1984), 12 Ohio St.3d 199, 202, 12 OBR 264, 266–267, 466 N.E.2d 171, 174.

13. See *Prendergast, supra,* at 538–539, 17 O.O. at 191–192, 27 N.E.2d at 237; *Dotson v. Com Trans, Inc.* (1991), 76 Ohio App.3d 98, 103, 601 N.E.2d 126, 130.

14. See *Dotson, supra,* at 102, 601 N.E.2d at 129.

The relationship between Linden's work and his employer's place of business depends on whether the Cyclones hockey club or the Panthers hockey club was his employer at the time of the injury. The Cyclones hockey club was an Ohio-based business with its principal place of business in Ohio. The majority of the work that Linden performed for the Cyclones occurred in Ohio, where the players practiced and played their home games. Linden also submitted evidence that he was required to make personal appearances at places in Ohio to promote the team as part of his employment.

Even if Linden worked solely for the Panthers, he performed his work primarily in Ohio and secondarily in Florida and other states where he played games for the Cyclones or the Panthers. For most of the 1994–1995 season, Linden played in Cincinnati, Ohio, with the Cyclones. He played only eight games for the Panthers.

The nature of the case makes it difficult to determine which state had the greatest interest in Linden. He was clearly employed pursuant to a contract with the Florida-based Panthers, but the majority of his working time was spent in Ohio working under the direction of an Ohio employer. For a short time, he performed primarily in Florida. He was a resident of Kentucky and was injured in Illinois.

Construing the evidence in the light most favorable to Linden, we believe that a genuine issue of material fact exists as to whether Linden's employment had sufficient contacts with the state of Ohio to entitle him to workers' compensation benefits under Ohio law. The fact that a substantial portion of Linden's employment was performed in Ohio for an Ohio employer, while not dispositive, establishes a significant connection with Ohio.[15]

At this point in the proceedings, we do not weigh the evidence; we only determine whether issues of fact exist. Based on the record before us, we hold that summary judgment was improperly granted to the defendants.

## VI. CONCLUSION

Summary judgment pursuant to Civ.R. 56 was improvidently granted in this case. Accordingly, we reverse the judgment of the trial court and remand the case for further proceedings.

*Judgment reversed*
*and case remanded.*

PAINTER and WINKLER, JJ., concur.

---

**15.** See *Dotson, supra,* at 104–105, 601 N.E.2d at 131 (where "significant part" of employee's work was performed in Ohio, plaintiff established that he had sufficient contacts with Ohio).