OPINION
{¶ 1} Plaintiff-appellant, The Travelers Indemnity Company, appeals a decision of the Preble County Court of Common Pleas, awarding summary judgment to defendant-appellee, Zumstein Management Company, on Travelers' breach of contract claim.
 {¶ 2} The parties stipulated to the following facts in the summary judgment proceedings: *Page 2 
 {¶ 3} "1. [Zumstein Management Company] is an Ohio corporation.
 {¶ 4} "2. [The Travelers Idemnity Company] is an insurance company that writes workers' compensation coverage in the State of Michigan.
 {¶ 5} "3. [Zumstein] entered into an agreement with Trans Freight, a trucking brokerage operating in the State of Michigan.
 {¶ 6} "4. As part of [Zumstein's] agreement with Trans Freight, [Zumstein] had each driver previously affiliated with Trans Freight become an employee of [Zumstein] and execute a C-110 form electing to be covered by Ohio's Workers' Compensation system. * * *
 {¶ 7} "5. The drivers who signed the C-110 forms were residents of the State of Michigan.
 {¶ 8} "6. All drivers were covered by BWC Certificates in Ohio at all times pertinent to this case.
 {¶ 9} "7. There was, at all times pertinent to this case, a receptionist/dispatcher assigned to a cubicle in Michigan within the physical confines of Trans Freight's building, however, that was a Zumstein Management employee.
 {¶ 10} "8. As a result, [Zumstein] requested its agent, Phelan Insurance Agency in Versailles, Ohio, to procure workers' compensation coverage for that individual.
 {¶ 11} "9. Phelan did submit an application for workers' compensation coverage to the Workers' Compensation Placement facility on or about July 17, 2002. * * *
 {¶ 12} "10. Through the Workers' Compensation Placement facility, [Travelers] was assigned to Zumstein Management Company first for a policy which provided coverage from July 20, 2002 through July 20, 2003, and subsequently for a policy that provided coverage from July 20, 2003 through March 28, 2004. * * *
 {¶ 13} "11. The contract of insurance designated Michigan as the state whose law was to apply to the contract. *Page 3 
 {¶ 14} "12. Based upon [Zumstein's] dispatch employee in Michigan, [Travelers] calculated, and [Zumstein] paid, a premium of $955.00.
 {¶ 15} "13. On or about March 20, 2003, Jay Warren, an employee of [Zumstein], submitted an Ohio workers' compensation claim.
 {¶ 16} "14. The Ohio claim was then dismissed and Jay Warren submitted a workers' compensation claim in the State of Michigan.
 {¶ 17} "15. The workers' compensation claim filed in the State of Michigan went to the attention of [Travelers].
 {¶ 18} "16. [Zumstein] was notified of the pendency of the Michigan claim in April, 2003.
 {¶ 19} "17. [Travelers] negotiated, without input from [Zumstein], a settlement with Jay Warren on or about January 26, 2004, without any consultation with [Zumstein].
 {¶ 20} "18. When asked to consent to [Travelers'] request to settle Jay Warren's claim, [Zumstein] consented.
 {¶ 21} "19. [Zumstein] advised [Travelers] that each driver used by Zumstein Management, Inc. was, in [Zumstein's] opinion, exclusively covered under Ohio Workers' Compensation on February 26, 2004, and provided copies of Ohio Workers' Compensation certificates.
 {¶ 22} "20. Thereafter, [Travelers] conducted an audit of [Zumstein's] financial records and included each of the drivers who had executed a C-110 form as being subject to coverage under Michigan's workers' compensation system.
 {¶ 23} "21. The premium calculated by [Travelers], including all such drivers for the policy period for 2002 through 2003, was $267,124.00."
 {¶ 24} On January 18, 2006, Travelers brought a breach of contract action against Zumstein in the Preble County Court of Common Pleas, alleging Zumstein owed it $266,169. *Page 4 
This amount represented the difference between what Travelers refers to as the "earned premium" or "final premium" of $267,124 — which amount Travelers determined after auditing Zumstein's financial records as Travelers was permitted to do under the parties' policies[1]-and the "advance premium" of $955, which Zumstein already had paid. The parties submitted the stipulations set forth above and filed cross-motions for summary judgment.
 {¶ 25} The trial court issued a decision denying Travelers' motion for summary judgment, granting Zumstein's motion for summary judgment, and dismissing Travelers' complaint. In support of its decision, the trial court found that a loss was not covered under the policies when an insured had "other insurance," and that Zumstein had such other insurance as a result of having its drivers execute the C-110 forms, by which the drivers elected to be covered under Ohio's workers' compensation system.
 {¶ 26} Travelers appeals, assigning the following as error:
 {¶ 27} Assignment of Error No. 1:
 {¶ 28} "THE TRIAL COURT ERRED IN GRANTING THE SUMMARY JUDGMENT MOTION OF ZUMSTEIN."
 {¶ 29} "This court conducts a de novo review of a trial court's decision on summary judgment. White v. DePuy, Inc. (1999),129 Ohio App.3d 472, 478. In applying the de novo standard, we review the trial court's decision independently and without deference to the trial court's determination. Id. at 479. A court may grant summary judgment only when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence submitted that reasonable minds can *Page 5 
come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. Civ. R. 56(C); Welco Indus., Inc. v. AppliedCos., 67 Ohio St.3d 344, 246, 1993-Ohio-191." Air-Ride, Inc. v. DHLExpress (USA), Inc., Clinton App. No. 2008-04-012, 2009-Ohio-99, ¶ 10.
 {¶ 30} Travelers presents five arguments in support of its contention that the trial court erred in granting Zumstein's motion for summary judgment. In its first argument, Travelers asserts that the trial court erred in finding that its policies with Zumstein did not provide workers' compensation coverage so long as Zumstein had "other insurance." We disagree with this argument.
 {¶ 31} The parties' policies state in pertinent part:
 {¶ 32} "This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces." (Emphasis added.)
 {¶ 33} The only workplace listed in Items 1 or 4 of the policies' Information Page was the dispatch desk in the Trans Freight building where Zumstein's receptionist/dispatcher worked, and the only "Item 3.A. state" listed in the policies was Michigan. This language compels the conclusion that the policy does not provide coverage where the insured, i.e., Zumstein, has "other insurance." Moreover, Zumstein does have other insurance as a result of having its 29 drivers execute the C-110 forms, thereby electing to be covered under Ohio's workers' compensation system.
 {¶ 34} Travelers contends that the trial court failed to consider the effect of the policies' Michigan Law Endorsement, which, Travelers contends, voids the "other insurance" language. Specifically, Travelers asserts that the trial court ignored the language in the Endorsement stating that the policies (1) covered all of Zumstein's employees in any business in which Zumstein was engaged, (2) required Travelers to pay all obligations for which Zumstein may *Page 6 
become liable under Michigan's workers' compensation system, and (3) provided that any provision in the policies that was in conflict with any provision in the Endorsement was null and void.
 {¶ 35} However, the Endorsement requires Travelers to pay workers' compensation only to "the persons that may become entitled thereto[.]" (Emphasis added.) Zumstein was not liable to pay Warren's workers' compensation claim in Michigan because Warren, as a result of signing the C-110 form, was contractually bound to bring his workers' compensation claim in Ohio. Thus, Zumstein, and therefore, Travelers, had no liability to pay Warren on the workers' compensation claim he brought in Michigan.
 {¶ 36} Travelers' second argument is that the trial court erred in finding that the C-110 agreements signed by Zumstein's 29 drivers provided Zumstein with "other insurance." Travelers contends that the C-110 agreements did not provide the Ohio Bureau of Workers' Compensation with jurisdiction over any workers' compensation claim filed by the 29 drivers and did not preclude another state from deciding not to recognize the C-110 agreements. We disagree with this argument.
 {¶ 37} Former R.C. 4123.54(H)[2] provided in pertinent part:
 {¶ 38} "(H) Whenever, with respect to an employee of an employer who is subject to and has complied with this chapter, there is possibility of conflict with respect to the application of workers' compensation laws because the contract of employment is entered into and all or some portion of the work is or is to be performed in a state or states other than Ohio, the employer and the employee may agree to be bound by the laws of this state or by the laws of some other state in which all or some portion of the work of the employee is to be performed. * * * If the agreement is to be bound by the laws of this state and the employer *Page 7 
has complied with this chapter, then the employee is entitled to compensation and benefits regardless of where the injury occurs or the disease is contracted and the rights of the employee and the employee's dependents under the laws of this state are the exclusive remedy against the employer on account of injury, disease, or death in the course of and arising out of the employee's employment."
 {¶ 39} An employer and his employees "may mutually agree to be bound by the workers' compensation laws of the State of Ohio by executing Form C-110, or mutually agree to be bound by the workers' compensation law of some other state by executing Form C-112, such forms to be obtained from and filed with the bureau of workers' compensation within ten days after execution." Former Ohio Adm. Code 4123-17-20(D).[3]
 {¶ 40} By having its 29 drivers execute the C-110 forms, Zumstein and its drivers entered into a contract whereby the parties agreed that (1) the rights to workers' compensation of the drivers and their dependents would be determined under Ohio's workers' compensation law, and (2) Ohio's workers' compensation law is the "exclusive remedy" that the drivers and their dependents have against Zumstein on account of any injury, disease, or death the drivers may sustain in the course of their employment with Zumstein. See former R.C. 4123.54(H) and former Ohio Adm. Code 4123-17-20(D).
 {¶ 41} Travelers asserts that the trial court erred in failing to consider whether the employment relationship between Zumstein and its 29 drivers was "localized in Ohio," i.e., whether the employment relationship had sufficient contacts with this state, so as to permit recovery under the Ohio Workers' Compensation Act. Travelers contends that the trial court should have applied the factors listed inPrendergast v. Indus. Comm. of Ohio (1940), 136 Ohio St. 535, to determine whether the Ohio BWC had jurisdiction over any claim submitted *Page 8 
by the 29 drivers. We find this argument unpersuasive.
 {¶ 42} Where an employer and employee have not reached an agreement as to whether the employee's workers' compensation rights will be determined according to the law of Ohio or another state, it must be determined whether the service rendered by the employee was connected with or part of the services contemplated to be performed in Ohio, or stated another way, whether the relationship between the employer and the employee was "localized in Ohio" before the employee is entitled to receive benefits under Ohio's workers' compensation system.Prendergast v. Indus. Comm. of Ohio (1940), 136 Ohio St. 535, 543; andHall v. Indus. Comm. of Ohio (1936), 131 Ohio St. 416, 419 — 420.[4]
 {¶ 43} The factors to consider in determining whether the employment relationship was localized in Ohio include determining (1) where the employment contract was executed, (2) where the employee's name is included on payroll reports, (3) where the injury occurred, (4) where the employee resides, (5) where the employee works, and (6) which state has the primary interest in the employee. See Prendergast at 538-539. See, also, Dotson v. Com Trans, Inc. (1991), 76 Ohio App.3d 98, 104; andLinden v. Cincinnati Cyclones Hockey Club, L.P. (2000),138 Ohio App.3d 634, 643.
 {¶ 44} However, these factors need to be considered only when the employer and employee have not reached an agreement as to whether the employee's workers' compensation rights will be determined according to the law of Ohio or another state. These factors do not need to be considered when, as here, the employer and employee have reached an agreement as to whether the employee's workers' compensation rights will be determined according to the law of a particular state.[5] *Page 9 
 {¶ 45} This principle was illustrated in State ex rel. Stanadyne, Inc.v. Indus. Comm. (1984), 12 Ohio St.3d 199. In that case, a truck driver was fatally injured in Indiana while working for his employer who did business in several states, including Ohio and Indiana. The administrator of the employee's estate filed a claim for workers' compensation benefits with the Industrial Commission of Ohio. Id. at 200. After initially denying the claim, the commission subsequently allowed it. The employer appealed, and the matter eventually reached the Ohio Supreme Court. Id.
 {¶ 46} After narrowing its inquiry to the question of whether the decedent had "sufficient contacts" with Ohio so as to entitle his dependents to be eligible for death benefits under Ohio's workers' compensation law, the court found that it was "unable to conclude that the decedent's death was in any respect localized in Ohio." State exrel. Stanadyne, Inc., 12 Ohio St.3d at 202. Importantly to this case, the court added that "if the decedent had sought to receive coverage under the workers' compensation law of [Ohio], then an agreement could have been executed in accordance with R.C. 4123.54." Id. at 203. After finding that no such agreement had been executed, the court concluded that the commission abused its discretion in allowing death benefits to decedent's dependents. Id.
 {¶ 47} Travelers contends that the case of Stanley v. Mayfield (Aug. 2, 1990), Mahoning App. No. 89 CA 184, "demonstrates that the Ohio [BWC] would not accept the C-110 form as a predicate for jurisdiction unless the employment relationship had sufficient Ohio exposure." However, Travelers' reliance on that case is misplaced.
 {¶ 48} In Stanley, the court found that the trial court did not have jurisdiction under R.C. 4123.519 to rule on claimant's appeal of a decision by the Industrial Commission denying his claim for benefits, because claimant's injury occurred outside the state and there was no evidence that the contract of employment between claimant and his employer was entered into by the claimant and his employer in the county in which claimant brought the appeal. *Page 10 
 {¶ 49} However, since Stanley was decided, R.C. 4123.519, which was renumbered as R.C. 4123.512, has been amended to allow a trial court in which an action has been mistakenly filed, to transfer the action to the court of a county having jurisdiction, and the provisions of R.C. 4123.519(A) (now contained in R.C. 4123.512[A]) at issue inStanley are no longer viewed as jurisdictional requirements, but rather as venue provisions. Mays v. Kroger Co. (1998), 129 Ohio App.3d 159,163. Id. In any event, nothing in Stanley impacts our conclusion that the C-110 forms signed by Zumstein's 29 drivers are enforceable by Zumstein against its drivers since former R.C. 4123.54(H) allowed Zumstein and its drivers "to agree to be bound by the laws of this state[.]"
 {¶ 50} Travelers' third argument is that the trial court erred in failing to determine whether Zumstein may become liable under Michigan's Workers' Compensation Act for any benefit to which one of the 29 drivers may become entitled. However, as we explained in our response to Travelers' second argument, by executing the C-110 forms, the 29 drivers agreed that Ohio was to be the state of exclusive remedy with respect to any workers' compensation claim they have or may someday file. Former R.C. 4123.54(H). Thus, Zumstein could not have become liable to pay workers' compensation benefits under Michigan law to any of the 29 drivers who executed the C-110 forms.
 {¶ 51} In its fourth argument, Travelers argues that Michigan law invalidates the C-110 forms signed by Zumstein's drivers because Michigan law does not allow workers to waive their right to workers' compensation. However, we agree with the trial court that by signing the C-110 forms, Zumstein's drivers did not waive their right to workers' compensation coverage under Michigan law, but rather, elected to be covered under Ohio's workers' compensation law, instead.
 {¶ 52} In its fifth argument, Travelers contends that Zumstein's failure to timely file 13 of the C-110 forms within ten days after they were executed invalidates them under *Page 11 
R.C. 4123.54(H). However, Zumstein submitted an affidavit from its vice-president, Sam Hoops, along with the file-stamped copies of the C-110 forms executed by its 29 drivers, both of which establish that the forms were filed within ten days of the date on which the drivers executed the forms, as required by R.C. 4123.54(H).
 {¶ 53} Travelers' first assignment of error is overruled.
 {¶ 54} Assignment of Error No. 2:
 {¶ 55} "THE TRIAL COURT ERRED IN DENYING THE SUMMARY JUDGMENT MOTION OF TRAVELERS."
 {¶ 56} Travelers asserts that the trial court should have granted summary judgment in its favor because it had a right under the policies to recalculate the premium owed at the end of the policies' periods and its recalculations establish that Zumstein owes $266,174. However, for the reasons stated in our response to Travelers' first assignment of error, Zumstein had no obligation to provide workers' compensation benefits to any of its 29 drivers under Michigan law, and therefore, there was no basis for Travelers to recalculate Zumstein's premium by including the 29 drivers in its calculations.
 {¶ 57} Travelers' second assignment of error is overruled.
 {¶ 58} Judgment affirmed.
WALSH, P.J., and BRESSLER, J., concur.
[1] {¶ a) The "audit" provision in part five of the parties' policies stated in pertinent part:
{¶ b} "You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium."
[2] R.C. 4123.54 was amended in September 2008, and the provisions of former R.C. 4123.54(H) have been renumbered in R.C. 4123.54(H)(1).
[3] Former Ohio Adm. Code 4123-17-23(D) was amended on January 5, 2009, and division (D) is now contained in division (E) of that administrative code section.
[4] See, also, 94 Ohio Jurisprudence 3d (2008) 52, Workers' Compensation, Section 16.
[5] See 94 Ohio Jurisprudence 3d (2008) 52, Workers' Compensation, Section 16. *Page 1